IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINE KURTES,                           )
O/B/O RAYMOND JOHN KURTES, JR.  )
                                            )
       Plaintiff,                         )
                                            )
    v.                                  )  Civil Action No. 22-1649
                                            )
COMMISSIONER OF SOCIAL SECURITY,  )
                                            )
       Defendant.                         )

**O R D E R**

AND NOW, this 15th day of December, 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on May 3, 2023,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on March 31, 2023,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**    **Background**

Plaintiff Raymond John Kurtes, Jr.,[1] now deceased and represented by his widow, Christine Kurtes, protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, claiming that he became disabled on February 1, 2017 due to various mental health impairments, including anxiety, obstructive sleep

---

[1] The Court will refer to Raymond John Kurtes as "Plaintiff" and to Christine Kurtes as "Ms. Kurtes."

1

apnea, obesity, depression, trauma/stressor-related disorder, adjustment disorder, bipolar disorder, and somatoform disorder. (R. 14; Doc. No. 13 at 2). His claim was denied initially, again on reconsideration, and by Administrative Law Judge ("ALJ") David Brash on March 2, 2020. (R. 186-98). Appeals Council remanded his claim, directing the ALJ to explain why Dr. Stacy Golman, Psy.D.'s opined limitations were not adopted and to further consider this opinion pursuant to 20 C.F.R. § 404.1520c. (R. 205-06). On remand, ALJ Leslie Perry-Dowdell denied Plaintiff's claim. (R. 10-21). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment. (Doc. Nos. 12, 14).

## II.   Standard of Review

The Court reviews a social security case based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'") (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence). Reviewing courts may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence. *See Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986). If the district court finds the Commissioner's findings of fact are supported by substantial evidence, then it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence

"even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g); *Monsour*, 806 F.2d at 1190-91).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* To facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process to guide ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 404.1520. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at § 404.1520(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 404.1545(a). In crafting the RFC, the ALJ must consider all the evidence in the record. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The ALJ may not mischaracterize or overlook evidence. *See Cotter*, 642 F.2d at 706. At Step Four, it is the

claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See id.* at § 404.1520(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at § 404.1523.

## III. The ALJ's Decision

In her June 16, 2021 decision, the ALJ found that Plaintiff had not been engaged in substantial gainful activity from his alleged onset date of February 1, 2017 through his date last insured, December 31, 2020. (R. 13). The ALJ proceeded to Step Two of the process and found that Plaintiff had several severe impairments: anxiety, obstructive sleep apnea, and obesity. (*Id.*) The ALJ concluded that none of Plaintiff's impairments or any combination of impairments met any of the listings that would satisfy Step Three. (R. 14-16).

Following this, the ALJ found that Plaintiff retained the RFC to perform medium work with the following limitations:

- Not able to climb ladders, ropes, scaffolds, or crawl;
- Occasionally use foot controls, balance, stoop, kneel, and crouch;
- Avoid unprotected heights and concentrated exposure to extreme cold and heat, humidity, fumes, odors, dusts, gases, pulmonary irritants and dangerous machinery;
- Understand and carry out simple instructions;
- Limited to routine and repetitive tasks with no fast paced and simple decisions;
- Limited to a low stress work environment with occasional and routine changes in work setting;

5

- Not able to have interactions with the public, and only incidental collaboration with coworkers and supervisors.

(R. 16). In formulating this RFC, the ALJ analyzed Dr. Golman's opinion and found it "partially persuasive," noting that Dr. Golman's opined social limitations were "less persuasive in that they are not consistent with the medical evidence of record . . . [and reasoning that] [a]lthough [Plaintiff] avoided most social interaction, he was able to shop in stores and has never been laid off from a job because of problems getting along with other people[.]"  (R. 18 (citing Ex. 5E)). The ALJ then determined, with the aid of testimony from a vocational expert ("VE"), that although Plaintiff was unable to perform any past relevant work through his date last insured, there were jobs existing in the national economy that he could perform. (R. 19-20). Ultimately, the ALJ found that Plaintiff was not disabled. (R. 20-21).

## IV.     Legal Analysis

Plaintiff raises several arguments as to why the ALJ's findings are not supported by substantial evidence. (Doc. No. 13). The Court agrees and finds that the ALJ mistakenly mischaracterized and overlooked evidence within the record that was central to finding Dr. Golman's opined social limitations "less persuasive." (R. 18). Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence and finds that remand is necessary for further consideration and discussion of this issue.

As noted, Plaintiff asserts that the ALJ erred by failing to properly consider and evaluate Dr. Golman's opinion. (Doc. No. 13 at 10-13). Specifically, he argues that the ALJ should have found Dr. Golman's opinion persuasive because Dr. Golman's opined social limitations are consistent with medical evidence of record. (*Id.* at 12). Plaintiff posits that the ALJ cherry-picked record evidence supporting her conclusion instead of considering all the evidence. (*Id.*). Plaintiff also points out that the ALJ incorrectly stated that Plaintiff was never fired because of

problems getting along with people because Plaintiff himself admitted he was fired due to his inability to get along with others.  (*Id.* (citing R. 941)).  The ALJ used this statement as part of her reasoning in finding Dr. Golman's opined social limitations less persuasive; because of this flawed reasoning, Plaintiff argues that this incorrect statement led to an RFC that is not supported by substantial evidence.  (Doc. No. 13 at 12-13).  Plaintiff also contends that the ALJ failed to discuss several of Plaintiff's mental health impairments and did not properly evaluate the testimony of Plaintiff and Ms. Kurtes.  (Doc. No. 13 at 7-10, 13-16).

Defendant counters that Plaintiff's argument as to the evaluation of Dr. Golman's opinion is misplaced because the ALJ did not reject Dr. Golman's limitations, but instead merely found her opined social limitations less persuasive.  (Doc. No. 15 at 16).  Defendant emphasizes that the ALJ accounted for any social difficulties Plaintiff may have by restricting Plaintiff to limited contact with others.  (*Id.* (citing R. 15)).  Defendant further notes that the ALJ fairly characterized the evidence related to Plaintiff's mental impairment by citing both favorable and unfavorable findings and testimony.  (Doc. No. 15 at 16).  Additionally, Defendant adds that the ALJ was correct in stating Plaintiff was never fired because Plaintiff represented in his disability application that he had never been fired for failing to get along with others.  (*Id.* at 15 n.9 (citing R. 404)).  Defendant further argues that the ALJ sufficiently discussed Plaintiff's mental health impairments and properly analyzed the testimony of Plaintiff and Ms. Kurtes.  (Doc. No. 15 at 11-13, 17-20).

A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Fargnoli*, 247 F.3d at 40 (quoting *Burnett*, 220 F.3d at 121).  In formulating a claimant's RFC, the ALJ must consider all relevant evidence and include "a clear and satisfactory explication of the basis on which [the RFC] rests.'"  *Fargnoli*, 247 F.3d

at 41 (quoting *Cotter*, 642 F.2d at 704). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" *Id.* (quoting *Cotter*, 642 F.2d at 705). *See also* S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Here, while the RFC crafted by the ALJ was detailed, the ALJ appears to have mistakenly mischaracterized and overlooked evidence relating to whether Plaintiff had ever been fired or laid off from a job because of his inability to get along with others. (R. 18). Specifically, the ALJ stated:

> Dr. Golman noted the claimant had marked limitation in all areas of social functioning . . . [these] social limitations are less persuasive in that they are not consistent with the medical evidence of record . . . Although [Plaintiff] avoided most social interaction, he was able to shop in stores and has never been fired or laid off from a job because of problems getting along with other people[.]"

(R. 18 (citing Ex. 5E)). However, the record reflects that Plaintiff's representations are not clear on this point as he stated during treatment on February 11, 2021 at Southwest Behavioral Care that he was forced to resign or was terminated from a job (R. 941), but represented in his disability application that he had never been fired for failing to get along with others as of March 16, 2018, (R. 404). Plaintiff further explained during treatment that he was terminated or forced to resign from his job when he was "driving a van delivering animals and they said that it was a customer friendly environment and I was too shut down[.]" (R. 941). This explanation conflicts with the ALJ's statement that Plaintiff has never been fired or laid off from a job because of problems getting along with other people and, given the ambiguity in the record on this matter,

8

required further discussion. (R. 18). The ALJ failed to explain or seek testimony to clarify this apparent conflict in Plaintiff's representations within the record. Instead, she appears to have relied solely on Plaintiff's representations in his disability application without addressing the conflicting evidence within the record. (*See* R. 18 (citing Ex. 5E)).

Therefore, remand is necessary for a more focused consideration of Plaintiff's social limitations. While by no means is the Court suggesting that the ALJ is required to accept Dr. Golman's proffered limitations, she does need to clarify the record as to whether Plaintiff ever lost a job because of social difficulties if she wishes to rely on this fact in evaluating Dr. Golman's opinion. Additionally, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that all of Plaintiff's mental health impairments are fairly considered and that the testimony of Plaintiff and Ms. Kurtes is sufficiently analyzed.

**V.    Conclusion**

In sum, because the ALJ mistakenly mischaracterized or misconstrued certain evidence in the record—evidence upon which the ALJ relied in evaluating Dr. Golman's opinion and in determining Plaintiff's RFC—the Court finds that substantial evidence does not support the ALJ's decision. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge


ecf:        Counsel of record